## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LUMA HALIG,<br><br>   Plaintiff,<br><br> v.<br><br>ILLINOIS COLLEGE OF OPTOMETRY,<br><br>   Defendant. | **Civil Action No. _____** |

### PLAINTIFF'S COMPLAINT AND JURY DEMAND

  COMES NOW, LUMA HALIG, (hereinafter, referred to as "Ms. Halig" or "Plaintiff"), by and through her attorney of record, Jason J. Bach, Esq., of The Bach Law Group, LLC, complaining of the ILLINOIS COLLEGE OF OPTOMETRY (hereinafter, referred to as "ICO" or "Defendant"), and files this her original Complaint and Jury Demand and would respectfully show as follows:

### INTRODUCTION

  This is a Complaint for damages and injunctive relief brought by a student of ICO. The claims against ICO and faculty of this private educational institution are based upon Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (hereinafter, referred to as the "Rehabilitation Act"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* (hereinafter, referred to as the "ADA"). Ms. Halig also relies on the ICO Student Guide (hereinafter, referred to as "Student Guide") and individual agreements between Ms. Halig and ICO, and alleges a pendent breach of contract claim. Ms. Halig has also asserted a claims against ICO for negligent hiring, training, and supervision, for intentional infliction of emotional distress, and injunctive and declaratory relief.

1

## **NATURE AND COMPLAINT OF THE ACTION**

1. Plaintiff Luma Halig is a person with a disability who began attending ICO in 2013.

2. Upon matriculating, Ms. Halig immediately provided the appropriate documentation to ICO's disability services in order to receive appropriate accommodations for her disabilities.

3. Unfortunately, ICO utterly failed to provide Ms. Halig with reasonable accommodations so she was unable to succeed in her classes, which required her to repeat the first year over again.

4. While ICO promised to provide Ms. Halig with her required accommodations this time around, they once again refused to do so.

5. Ms. Halig had to get assistance from the Office of Civil Rights (hereinafter, referred to as the "OCR") to ensure ICO would accommodate her needs, as law requires them.

6. Despite Ms. Halig and ICO signing an OCR agreement that required ICO to properly accommodate her disabilities, ICO continued to ignore Ms. Halig's need for accommodations for the next two years and her grades suffered as a result.

7. ICO accused Ms. Halig of using her disability as an excuse for poor performance, completely ignoring her pleads for proper accommodations, and expelled her in August 2016.

8. Ms. Halig brings this action against Defendant ICO, pursuant to Section 504 of the Rehabilitation Act and the ADA, for discriminating against her based upon her disability, as more fully described below.

9. It was necessary for Ms. Halig to hire the undersigned attorneys to file this lawsuit. Upon judgment, Ms. Halig is entitled to an award of attorney fees and costs under the Rehabilitation Act, as well as pursuant to the ADA; 29 U.S.C. §§ 701, *et seq.*, 42 U.S.C. §§ 12101, *et seq.*, and further relief as justice requires.

## JURISDICTION

10. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. § 1331 (federal question) because the matters in controversy arise under the laws of the United States. In addition, jurisdiction is conferred upon this Court pursuant to the Rehabilitation Act and the ADA and the federal regulations of both issued thereunder. Further, this Court has jurisdiction to award attorney's fees and costs to Ms. Halig under the Rehabilitation Act and the ADA.

11. This Court also has supplemental jurisdiction over Ms. Halig's state claims against Defendant, pursuant to 28 U.S.C. § 1367, as there exist claims arising out of the same transaction and occurrence as her federal claims.

## VENUE

12. Under 28 U.S.C. § 1391, venue is proper before this Court because the events and omissions giving rise to Ms. Halig's claims occurred in this district, and Ms. Halig and Defendant are located in this district.

## PARTIES

13. Plaintiff Luma Halig is currently a resident of the State of Illinois and, at all relevant times, was a student at ICO.

14. Ms. Halig is also a person with a disability.

15. Defendant ICO is a private optometry school located in the State of Illinois and is duly authorized under the laws of the State of Illinois to educate persons in the professional field of optometry. ICO is located at 3241 S. Michigan Ave, Chicago, Illinois 60616. At all relevant times, ICO was responsible for the care, management and control of all school business within its jurisdiction; including, but not limited to, the training of administrators, educators and other staff members as the rights, and their commensurate duties, as to students with disabilities. In addition, ICO is the recipient of federal financial assistance to assure disabled and handicapped students

receive appropriate accommodations and modifications as necessary. ICO may be served by and through its registered agent Floyd D. Perkins at 3 First National Pl, Suite 3500, Chicago, Illinois 60602.

## STATEMENT OF FACTS

16. Ms. Halig suffers from attention deficit disorder, diagnosed anxiety disorder, and dyslexia.

17. Despite her disability, Ms. Halig has had tremendous success in school in the past, earning high marks in graduate school and publishing papers, so long as she is put on a level playing field receiving reasonable accommodations.

18. She began attending ICO's Optometry program in the 2013-2014 term and was initially on track to complete her degree during the 2016-2017 term.

19. Immediately upon matriculating to ICO, Ms. Halig reached out to ICO's disability services and provided appropriate documentation to secure reasonable accommodations so that ICO could provide her the same opportunities as her non-disabled peers.

20. Despite Ms. Halig's efforts to achieve parity with classmates, ICO refused to provide her with the accommodations to which she was entitled.

21. ICO did not analyze programmatic objectives to determine how Ms. Halig's disabilities could be met in the classroom, did not counsel her on how to reach out to the ICO Director of Student Development and discuss her situation with professors, and did not alter its test site to provide Ms. Halig with an undistracted place to complete exams.

22. Kept off the level playing field, Ms. Halig struggled to succeed; as a result, her grades during the first year were not good, and she was placed on academic probation.

23. Following extensive meetings with the Student Promotions Committee (hereinafter, referred to as the "SPC"), ICO recommended Ms. Halig repeat the first year classes.

24. Despite the year of frustrations and lack of accommodations, Ms. Halig complied with ICO's request. In Fall 2014, Ms. Halig enrolled in first year classes again, this time with the school's purported support in accommodating her disabilities.

25. Ms. Halig worked incredibly hard to succeed despite her disabilities and worked earnestly in conjunction with ICO to develop appropriate and reasonable accommodations tailored to her needs.

26. Ms. Halig's prescribed accommodations included: double time for any written exams, quizzes or other graded in-class works; extended time for any graded or tested practical as specified by a disability expert, notes and material that are fully complete and do not contain any blanks; and quiet testing environments free from any visual or auditory distractions.

27. Despite ICO promising to accommodate Ms. Halig this time as she repeated her first year courses, the school failed to provide her with the breadth of services her disability required.

28. ICO has repeatedly used Ms. Halig's disability and underachievement as an easy excuse to avoid implementing accommodations that she is rightfully owed.

29. ICO also refused to supplant Ms. Halig's initial first year grades from her cumulative GPA with her new grades, even though her earlier GPA was a direct result of the school's earlier failure to properly accommodate her needs.

30. Thus, Ms. Halig's hopes for 2014-2015 success were dashed before the year began; she not only had to work *again* without proper accommodations, but she began her second round of first year classes with an already low GPA caused by ICO's deficiencies in meeting her needs the first time around.

31. With her needs still unmet, Ms. Halig continued to struggle. But Ms. Halig was not entirely alone this round, as she fought for recognition from the OCR to assure ICO would not again ignore her needs.

32. After prolonged negotiations, Ms. Halig and ICO signed an OCR agreement in Spring 2014, which agreement purportedly assured that the school would properly accommodate Ms. Halig's disabilities.

33. That means during her second run through ICO's optometry program, Ms. Halig should have been granted specific accommodations for her documented disabilities without hesitation. This did not happen.

34. ICO continued to capriciously ignore Ms. Halig's disability and the OCR agreement throughout the next two years. She had to fight each step of the way for accommodations that should have been simply granted.

35. For example, Ms. Halig was directed to complete her exams in an open, active conference room where other students were allowed to enter and exit repeatedly, cell phones rang intermittently, and an active printer loudly printed copies for the whole school; allegations that can be corroborated by at least one other student.

36. The Student Guide outlines the requirements for examination environments on pages 97 and 98, prohibiting students to enter more than five minutes late and instructing cell phones to be left outside of the exam room.

37. When Ms. Halig brought this deficiency up to the SPC in August 2016, appeals committee member Dr. Colip responded that her lack of success was due to her own failings and that Ms. Halig was merely blaming others. He never responded to her concerns that her needs were not being adequately met.

38. In its relationship with Ms. Halig throughout the academic year, ICO consistently and capriciously ignored its own stated institutional policies, regulations and contracts set forth to govern its relationship with its students.

39. Ms. Halig and ICO entered into several contracts prescribing the relationship between the school and the student that are outlined in the Student Guide and individual agreements between Ms. Halig and ICO.

40. The Student Guide promises on page 61 that ICO "will provide reasonable and appropriate accommodations for qualified students for whom a disability substantially limits one or more major life activities."

41. Moreover, in order to "create a more positive educational experience for all concerned," the Student Guide promises on page 113 that students, staff, faculty and visitors will be free of harassment based on disability. Derogatory statements based on someone's disability fall within this policy, as do "some types of conduct which may be acceptable in an informal social setting."

42. ICO dumped Ms. Halig into a non-compliant room for testing, excluded her from "clicker" extra credit class points, directed her to use an unreliable note capture system, refused to allow her extra time for laboratory clinicals, and has staunchly responded to Ms. Halig's requests with laments that she is using her disability as an excuse.

43. ICO utterly failed to provide Ms. Halig statutorily-mandated aids, even after ICO chastisement by the OCR, and continued to blame Ms. Halig for her failures.

44. Ms. Halig's grades dropped precipitously as a result; and, combined with the artificially low GPA from her first attempt in classes, Ms. Halig failed to meet academic benchmarks again in her second attempt.

45. In the event of necessary remediation for insufficient grades, ICO lists several options to remediate, all of which are subject to approval by the SPC.

46. In Ms. Halig's case, SPC Chair Dr. Gary Lesher drafted several provisions following SPC meetings with Ms. Halig, detailing specifically Ms. Halig's individual rights and expectations.

47. As recently as June 2016, Dr. Lesher promised Ms. Halig that she had until the end of Fall 2016 to bring up her GPA to remain enrolled in the school.

48. ICO agents at the SPC hearing displayed open disdain at Ms. Halig's requests for consistent accommodations and then decided to expel her from the program in August 2016.

49. Ms. Halig dutifully appealed her dismissal, to no avail.

## FIRST CAUSE OF ACTION

### *VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT OF 1973*

50. Each of the allegations set forth in paragraphs 1 through 49, inclusive, are hereby incorporated by this reference as if realleged fully herein.

51. The facts as previously described demonstrate violations of Section 504 of the Rehabilitation Act. Ms. Halig is a qualified individual with a disability in the United States, as defined in 29 U.S.C. § 705(20).

52. ICO receives federal financial assistance, as defined by 29 U.S.C. § 794, and, as such, may not discriminate against a person because of her disability.

53. Solely by reason of her disability, Ms. Halig was excluded from the participation in, denied the benefits of, and subjected to discrimination, exploitation and a hostile educational environment at, ICO; such acts and omissions violating the Rehabilitation Act.

54. ICO exercised bad faith in failing to provide appropriate and necessary accommodations and modifications to Ms. Halig so that she could continue in her educational program, a violation of the Rehabilitation Act thereby.

55. In addition, and in the alternative to the above-noted violation of the Rehabilitation Act, ICO also violated the Rehabilitation Act by retaliating against Ms. Halig when she began to advocate for her rights pursuant to the Act. Once Ms. Halig began voicing complaints regarding her lack of accommodations and filed a complaint with the OCR, ICO began treating her disparately from other similarly situated students.

56. ICO directed Ms. Halig to take her exams in an open, active conference room where other students entered and exited repeatedly and cell phones rang intermittently despite the fact that the Student Guide instructs students to leave cell phones outside of exam rooms.

57. ICO also excluded Ms. Halig from receiving "clicker" extra credit class points and harassed her with accusations that she was using her disability as an excuse for poor performance.

58. ICO further retaliated against Ms. Halig once again when ICO refused to give her extra time for laboratory clinicals and various other accommodations her medical paperwork requested.

59. After Ms. Halig voiced grievances regarding her lack of accommodations and filed a complaint with OCR against ICO for failing to provide reasonable accommodations, ICO and its agents and employees responded with retaliation against Ms. Halig by:

> (a) refusing her benefits and privileges offered to similarly situated students and promised by contractual documents;
>
> (b) providing disparate treatment in regards to action against Ms. Halig; and

9

  (c) summarily dismissing Ms. Halig's complaints without proper investigation in violation of written school policy.

60. Such acts, omissions and failures by ICO proximately caused injuries to Ms. Halig.

61. ICO has wrongly caused Ms. Halig to be discriminated against, denied her reasonable accommodations, harassed and retaliated against her, withdrawn her from the program, and intimidated her out of trying again to finish the program at ICO, all in violation of her rights pursuant to Section 504 of the Rehabilitation Act of 1973, thereby depriving her of the opportunity to complete her education and further her career, and inflicting emotional distress and physical injury, all to her damage in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

62. Ms. Halig is entitled to injunctive and declaratory relief to obtain the reasonable accommodations, as permitted under the Rehabilitation Act, to allow her access and participation in this education program and to remove any negative notations from her educational record.

63. It has been necessary for Ms. Halig to obtain the services of an attorney to prosecute this action, and she is entitled to an award of attorney's fees and costs of suit incurred herein.

## SECOND CAUSE OF ACTION

### *VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT*

64. Each of the allegations set forth in paragraphs 1 through 63, inclusive, are hereby incorporated by this reference as if realleged fully herein.

65. Ms. Halig is a "qualified individual with a disability," as defined in 42 U.S.C. § 12131(2).

66. ICO receives federal financial assistance so as to be covered by the mandate of the ADA.

67. ICO is a facility, and its operation constitutes a program and services for ADA purposes.

68. ICO failed and refused to reasonably accommodate Ms. Halig in violation of Title II of the ADA. Such failures proximately caused injuries to Ms. Halig.

69. ICO failed and refused to reasonably modify its services in violation of Title II of the ADA. Such failures proximately caused injuries to Ms. Halig.

70. In addition, and in the alternative, ICO also violated Title II of the ADA by retaliating against Ms. Halig when she began to advocate for her rights pursuant to the Rehabilitation Act. Once Ms. Halig began voicing complaints regarding her lack of accommodations and filed a complaint with the OCR, ICO began treating her disparately from other similarly situated students.

71. ICO directed Ms. Halig to take her exams in an open, active conference room where other students entered and exited repeatedly and cell phones rang intermittently despite the fact that the Student Guide instructs students to leave cell phones outside of exam rooms.

72. ICO also excluded Ms. Halig from receiving "clicker" extra credit class points and harassed her with accusations that she was using her disability as an excuse for poor performance.

73. ICO further retaliated against Halig once again when ICO refused her extra time for laboratory clinicals and various other accommodations her medical paperwork requested.

74. After Ms. Halig voiced grievances regarding her lack of accommodations and filed a complaint with OCR against ICO for failing to provide reasonable accommodations, ICO and its agents and employees responded with retaliation against Ms. Halig by:

>     (a) refusing her benefits and privileges offered to similarly situated students and promised by contractual documents;

11

    (b)    providing disparate treatment in regards to action against Ms. Halig; and

    (c)    summarily dismissing Ms. Halig's complaints without proper investigation in violation of written school policy.

75. Such acts, omissions and failures by ICO proximately caused injuries to Ms. Halig.

76. ICO has wrongly caused Ms. Halig to be discriminated against, denied her reasonable accommodations, harassed and retaliated against her, and withdrawn her from the program, all in violation of her rights pursuant to the ADA, depriving her of the opportunity to complete her education and further her career, and inflicting emotional distress and physical injury, all to her damage in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

77. Ms. Halig is entitled to injunctive and declaratory relief to reinstate her to a student in good standing at ICO to allow her access and participation in this education program and to remove any negative notations from her educational record.

78. It has been necessary for Ms. Halig to obtain the services of an attorney to prosecute this action, and she is entitled to an award of attorney's fees and costs of suit incurred herein.

## THIRD CAUSE OF ACTION

### *BREACH OF CONTRACT*

79. Each of the allegations set forth in paragraphs 1 through 78, inclusive, are hereby incorporated by this reference as if realleged fully herein.

80. Courts in Illinois and the Seventh Circuit impose a contractual relationship between students and universities. Materials actually provided to students, including enrollment agreements and catalogs, may become part of the agreement.

81. By admitting Ms. Halig and accepting her tuition payments, ICO has an express and implied contract with Ms. Halig in connection with rights explicitly guaranteed her by the various school materials; which include, but may not be limited to, ICO regulations, circulars, bulletins, publications, ICO administered websites, the Student Guide, and individualized agreements, as described more thoroughly above.

82. At all times relevant, Ms. Halig abided by and governed her conduct by the terms of the aforementioned contracts and met all of her financial obligations to ICO.

83. The actions of ICO, including, but not limited to, its discrimination against Ms. Halig, its denial of her requested reasonable accommodations, physical and programmatic accessibility, its harassment of and retaliation against her, and ultimate dismissal of her from the program, each constitute a breach of the express and implied contract and were perpetuated a complete lack of professional judgment whatsoever. ICO not only ignored its Student Guide but also crafted, then ignored, individualized agreements with Ms. Halig without providing any reason for its actions at all.

84. Given ICO's egregious disdain for Ms. Halig's disability, there is ample support that ICO's decision to expel Ms. Halig was based on illegitimate disability discrimination, retaliation for reporting ICO to the OCR, and Ms. Halig's continuing to follow up on her need for reasonable disability accommodations.

85. As a result of the breach committed against Ms. Halig, she has been damaged in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

86. Ms. Halig is entitled to injunctive and declaratory relief to reinstate her to a student in good standing at ICO to allow her access and participation in this education program and to remove any negative notations from her educational record.

87. It has been necessary for Ms. Halig to obtain the services of an attorney to prosecute this action, and Ms. Halig is entitled to an award of attorney's fees and costs of suit incurred herein.

## FOURTH CAUSE OF ACTION

### *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

88. Each of the allegations set forth in paragraphs 1 through 87, inclusive, are hereby incorporated by this reference as if realleged fully herein.

89. As a result of ICO's intentional conduct and omissions, Ms. Halig suffered, and continues to suffer, great mental and emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame and humiliation.

90. Ms. Halig has required medical and/or psychological care as the result of ICO's malfeasance and nonfeasance. This has caused Ms. Halig to incur expenses for medical care, treatment, and expenses incidental thereto.

91. As a result of the mental distress caused by ICO, Ms. Halig has suffered serious psychological injury, loss of community reputation, medical expenses, and has incurred substantial financial obligations in order to retain attorneys to seek redress against ICO's unlawful conduct, as well as grievous mental suffering, all to her damage in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

92. The acts, conduct and behavior of ICO were performed willfully, intentionally, oppressively, fraudulently and maliciously, by reason of which Ms. Halig is entitled to punitive damages in a sum in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

93. It has been necessary for Ms. Halig to obtain the services of an attorney to prosecute this action, and Ms. Halig is entitled to an award of attorney's fees and costs of suit incurred herein.

## FIFTH CAUSE OF ACTION

### *NEGLIGENT HIRING, TRAINING, & SUPERVISION*

94. Each of the allegations set forth in paragraphs 1 through 93, inclusive, are hereby incorporated by this reference as if realleged fully herein.

95. At all times material and relevant herein, ICO had a duty of reasonable care to its students, including Ms. Halig.

96. At all times relevant herein, ICO had a duty to protect the public, such as Ms. Halig, from the illegal actions of its own agents, officers, employees and others.

97. Likewise, at all times relevant herein, ICO had a duty not to hire individuals with a propensity towards committing unlawful acts against those who lawfully go about their business and to adequately train and supervise its agents, officers, and employees.

98. ICO breached its duties and is, therefore, negligent and liable to Ms. Halig who has suffered serious economic loss, loss of reputation, loss of daily and future income, and caused Ms. Halig to incur substantial financial obligations in order to retain attorneys, as well as other painful injuries, deprivation of her liberty, grievous mental suffering, all to her damage in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

99. It has been necessary for Ms. Halig to obtain the services of an attorney to prosecute this action, and Ms. Halig is entitled to an award of attorney's fees and costs of suit incurred herein.

## DEMAND FOR A JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Ms. Halig demands a jury trial for all issues in this matter.

## PRAYER FOR RELIEF

**WHEREFORE,** Ms. Halig prays that this Honorable Court enter judgment in her favor and against the Defendant: (a) for compensatory damages in an amount in excess of SEVENTY-

FIVE THOUSAND DOLLARS ($75,000.00); (b) for punitive damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00); (c) for injunctive and declaratory relief; and (d) together with the costs and disbursements of this action and such other attorney's fees, pursuant to the Rehabilitation Act and the ADA, 42 U.S.C. §§ 2000d, *et seq.*, such other and further relief as justice requires.

DATED this 8th day of March, 2017.

**THE BACH LAW FIRM, LLC**

By: */s/ Jason J. Bach*
JASON J. BACH, ESQ.
7881 W. Charleston Blvd., Suite 165
Las Vegas, Nevada 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
Attorney in Charge for Plaintiff